| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Kevin Tang, Esq. (SBN: 291051)**<br>**Tang & Associates**<br>**601 S, Figueroa Street., Suite 4050**<br>**Los Angeles, CA 90071**<br>**Tel: 213-330-2619 ; Fax : 213-403-5545**<br>**Email: tangkevin911@gmail.com** | |

☐ *Debtor's appearing without attorney*
☑ *Attorney for: Debtor*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>    **Blanca Estela Rubalcava** | CASE NUMBER: **2:18-bk-16436-NB**<br><br>CHAPTER: **13** |
|---|---|
| | **DEBTOR'S NOTICE OF MOTION AND**<br>**MOTION TO AVOID JUNIOR LIEN ON**<br>**PRINCIPAL RESIDENCE**<br>**[11 U.S.C. § 506(d)]** |
| <br><br><br><br>                                                        Debtor(s). | DATE:  **08/02/2018**<br>TIME:   **8:30 A.M.**<br>COURTROOM:  **1545**<br>ADDRESS:  **255 E. Temple Street, Los Angeles, CA 90012** |

**TO CREDITOR HOLDING JUNIOR LIEN** (*name*):   **Aspen G. Revocable Trust aka Aspen Properties Group, LLC., C/O FCI Lender Services, Inc & Best Diamond Funding Corp.**

1. **NOTICE IS HEREBY GIVEN** that on the above date, time and place in the indicated above, Debtor in the above-captioned case will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

2. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

3. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

4. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies under penalty of perjury under the laws of the United States of America that the above-stated hearing date and time were available for this type of Motion according to the self-calendaring procedures of the assigned judge, (*specify name of judge*) Judge **Neil W. Bason**.

---

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                    Page 1                            **F 4003-2.4.JR.LIEN.MOTION**

Executed on (*date*): 06/08/2018

**Tang & Associates**
Printed name of law firm (if applicable)

**Kevin Tang**
Printed name of Debtor or Attorney for Debtor

/s/ Kevin Tang
Signature of Debtor or Attorney for Debtor

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                    Page 2                **F 4003-2.4.JR.LIEN.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR: _____ Blanca Estela Rubalcava _____**

**NAME OF CREDITOR HOLDING JUNIOR LIEN (Respondent): Aspen G. Revocable Trust & Best Diamond Funding Corp.**

**1. Subject Property**: Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

  Street address: **16227 Salazar Drive**
  Unit number: _____
  City, county, state, zip code: **Hacienda Heights, CA 91745**

Legal description and /or map/book/page number, including county of recording: TRACT NO 27172 LOT 99
**County of Los Angeles**

☐ See attached page for legal description of Property or document recording number.

**2. Subject Lien**

Date and place of recordation of lien recording instrument number and document recording number (specify)
**1st Lien - Date: 01/24/2005 Place: Los Angeles County Document Number: 05-0166794 BK-PG-**

**2nd Lien - Date: 06/23/2005 Place: Los Angeles County Document Number: 05-1477951 BK-PG-**

**3rd Lien - Date: 01/24/2008 Place: Los Angeles County Document Number: 08-0151157 BK-PG-**

**3. Case History:**

  a. A voluntary petition under Chapter ☐ 7 ☐ 11 ☐ 12 ☑ 13 of the Bankruptcy Code, 11 U.S.C. was filed in this case on (specify petition date): **06/04/2018**

  b. ☐ An Order of Conversion to Chapter 13 was entered in this case on (specify date): _____

**4. Grounds for Avoidance of Junior Lien:**

  a. As of (date of title review) **06/11/2018**, the Property is subject to the following liens in the amounts specified securing the debt against the Property that the Debtor seeks to have treated as indicated:

    (1) (Name of holder of 1st lien) **CWMBS Inc., CHL Mortgage Pass Through Trust 2005-3 C/O Bayview Loan Servicing, LLC, ("Bayview")** in the amount of $ **652,318.28**.

    (2) (Name of holder of 2nd lien) **Aspen G. Revocable Trust aka Aspen Properties Group, LLC., C/O FCI Lender Services, Inc. ("Aspen")** in the amount of $**100,000.00** ☑ is ☐ is not to be avoided;

    (3) (Name of holder of 3rd lien) **Best Diamond Funding Corp.** in the amount of $ **42,600.00** ☑ is ☐ is not to be avoided;

    ☐ See attached page for additional lien(s).

  As of (date of valuation/appraisal) **04/18/2018**, Property is worth no more than (value per valuation/appraisal) $ **475,000.00**.

  b. As shown here, the Creditor holding the judicial lien encumbering the Property is wholly unsecured.

  c. **Evidence in Support of Motion:**

    (1) ☑ The amount of the lien identified in paragraph 4(a)(1) is based on (type of evidence) **Bayview Mortgage Statement**, attached hereto and identified as Exhibit **1**.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017          Page 3      **F 4003-2.4.JR.LIEN.MOTION**

(2) ☑ The amount of the lien identified in paragraph 4(a)(2) is based on (*type of evidence*) **Letter From Lender Aspen G. Revocable Trust aka Aspen Properties Group, LLC., C/O FCI Lender Services, Inc.**, attached hereto and identified as Exhibit **2**.

(3) ☑ The amount of the lien identified in paragraph 4(a)(3) is based on (*type of evidence*) **Deed of Trust for 3rd Lien - Best Diamond Funding Corp. (42,600.00)**, attached hereto and identified as Exhibit **4**.

(4) ☐ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit ___.

(5) ☑ The value of the Property from paragraph 4(b) is based on (*type of evidence*) **Appraisal Report**, attached as Exhibit **5**.

(6) ☑ Debtor submits the attached Declaration(s).

(7) ☑ Other evidence *(specify/identify supplemental evidence)*: **Deed of Trust for 2nd Lien - Aspen G. Revocable Trust (100,000.00)** attached as Exhibit **3**.

WHEREFORE, Debtor requests that this court issue an order granting this motion in the form of the **Attachment** to this motion. *(Attach a separate Attachment for each lien to be avoided.)*

Date: 06/08/2018

Respectfully submitted,

/s/ Kevin Tang
_____
Signature of Debtor or Attorney for Debtor

**Kevin Tang**
_____
Printed name of Debtor or Attorney for Debtor

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                              Page 4                    **F 4003-2.4.JR.LIEN.MOTION**

**ATTACHMENT TO MOTION/ORDER**
**(11 U.S.C. § 506: VALUATION/LIEN AVOIDANCE)**

This court makes the following findings of fact and conclusions of law:

1.      **Creditor Lienholder/Servicer:**
1) CWMBS Inc., CHL Mortgage Pass Through Trust 2005-3 C/O Bayview Loan Servicing, LLC, ("Bayview")
2) Aspen G. Revocable Trust aka Aspen Properties Group, LLC., C/O FCI Lender Services, Inc. ("Aspen")
3) Best Diamond Funding Corp.


2.      **Subject Lien:** Date and place or recordation of lien (*specify*):
1st Lien - Date: 01/24/2005 Place: Los Angeles County Document Number: 05-0166794 BK-PG-

2nd Lien - Date: 06/23/2005 Place: Los Angeles County Document Number: 05-1477951 BK-PG-

3rd Lien - Date: 01/24/2008 Place: Los Angeles County Document Number: 08-0151157 BK-PG-

Recorder's instrument number and/or document recording number: ___

3.      **Collateral:**
        a.      Real property (street address, city, county and state, where located, legal description or map/book/page
                number, including county of recording):
        **16227 Salazar Drive, Hacienda Heights, CA 91745   / TRACT NO 27172 LOT 99 /   .** ☐ See attached page.
        **Los Angeles**

        b.      Other collateral:   _____ . ☐ See attached page.

4.      **Secured Claim Amount**
        a. Value of Collateral: ......................................................................... **$475,000.00**
        b. Senior Liens (reducing equity in the property to which the Subject Lien can attach):
                (1) First lien: .................................................................. (**$652,318.28**)
                (2) Second lien: .......................................................... (**$100,000.00**)
                (3) Third lien: ................................................................ (**$42,600.00**)
                (4) Additional senior liens (*attach list*): ........................... ($_____)
                Subtotal: ....................................................................... ($ **749,918.28**)
        c. Secured Claim Amount (negative results should be listed as -$0-): ............. $ **0-**
        Unless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a
        nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims in Class 5A
        of the Plan.

5.      **Lien avoidance:** Debtor's request to avoid the Subject Lien is granted as follows. The effective date of avoidance
        of the Subject Lien (Lien Avoidance Effective Date) will be upon:
        ☑ completion of the Chapter 13 Plan, or ☑ receipt of a Chapter 13 discharge in this case.

6.      **Retention of lien until avoidance:** The Creditor Lienholder will retain the Subject Lien for the full amount due
        under the corresponding note and deed of trust, mortgage or lien if the Debtor's Chapter 13 case is dismissed or
        converted to any other chapter under the Bankruptcy Code, or if the Collateral is sold or refinanced, prior to the
        Lien Avoidance Effective Date.

7.      **Retention of rights upon foreclosure of other lien:** In the event that the holder of any other lien on the
        Collateral forecloses on its interest and extinguishes the Creditor Lienholder/Servicer's lien rights prior to the Lien
        Avoidance Effective Date, the Creditor Lienholder's lien shall attach to any proceeds greater than necessary to
        pay the senior lien(s) from the foreclosure sale.

☐ See attached page(s) for more liens/provisions.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2017                                Page 5                   **F 4003-2.4.JR.LIEN.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
337 N.Vineyard Ave.
Suite 100
Ontario, CA 91764

A true and correct copy of the foregoing document entitled (*specify*):   __Debtor's Motion to Avoid Junior Lien on Principal Residence__   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **06/11/2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Kathy A Dockery (TR): efiling@CH13LA.com**

**United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov**

**Kevin Tang on behalf of debtor Blanca Estela Rubalcava: tangkevin911@gmail.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **06/11/2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy:**
**Chambers of the Honorable, Neil W. Bason, 255 E. Temple Street, Suite 1552, Los Angeles, CA 90012**

**Debtor, Secured Creditors, Unsecured Creditors, and All Interested Parties**

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 06/11/2018 | Pablo Villalobos | /s/ Pablo Villalobos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                                    Page 6                    **F 4003-2.4.JR.LIEN.MOTION**

**SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| 1st lienholder *(name and address)*<br><br>**Bayview Loan Servicing, LLC**<br>**Attn: Corporate Officer**<br>**P.O. Box 650091**<br>**Dallas, TX 75265-0091** | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☑ Other: *(specify)*:<br><br>***Mortgage Statement*** | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**Bayview Loan Servcing, LLC**<br>**Attn; Corporate Officer**<br>**4425 Ponce De Leon Blvd., 5TH FLOOR**<br>**Coral Gables, FL 33146** | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *(specify)*: | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>**Bayview Loan Servcing, LLC**<br>**CORPORATION SERVICE COMPANY**<br>**WHICH WILL DO BUSINESS IN**<br>**CALIFORNIA AS CSC - LAWYERS**<br>**INCORPORATING SERVICE (C1592199)**<br>**2710 Gateway Oaks Drive #150N**<br>**Sacramento, CA 95833** | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *(specify)*: | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____<br>_____ |

| 2nd lienholder *(name and address)*<br>**Aspen Properties Group, LLC.**<br>**Attn: Corporate Officer**<br>**1221 W. 103rd St #108**<br>**Kansas City, MO 64114** | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☑ Other: *(specify)*:<br><br>***Letter From Secured Lender*** | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**Aspen Properties Group, LLC.**<br>**CORPORATION SERVICE COMPANY**<br>**WHICH WILL DO BUSINESS IN**<br>**CALIFORNIA AS CSC - LAWYERS**<br>**INCORPORATING SERVICE, (C1592199)**<br>**1221 W. 103rd St #108**<br>**Kansas City, MO 64114** | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *(specify)*: | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____<br>_____ |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)*<br>**FCI Lender Services, INC.**<br>**MICHAEL W GRIFFITH (C1153633)**<br>**8180 E Kaiser Blvd.,**<br>**Anaheim Hills, CA 92808** | Address from:<br>☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: *(specify)*: | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                    Page 7                              **F 4003-2.4.JR.LIEN.MOTION**

| 3rd lienholder (name and address) | Address from: | Delivery Method |
|---|---|---|
| **Best Diamond Funding Corp.**<br>**Attn: Corporate Officer**<br>**6428 Pacific Blvd, Ste 302**<br>**Huntington Park, CA 90255** | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☑ Other: (specify):<br>***Deed Of Trust Best Diamond Funding***<br>***Corp.*** | ☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 3rd lienholder (name) and Agent for Service of Process (name and address)<br>**Best Diamond Funding Corp.**<br>**MILTON RETANA (C2906297)**<br>**6428 Pacific Blvd #305**<br>**Huntington Park, CA 90255** | ☐ Proof of Claim ☑ Secretary of State<br>☐ FDIC website ☐ Other: (specify):<br>Status: PTB suspended | ☐ US Mail<br>☑ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 3rd lienholder (name) and Servicing Agent (name and address) | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: (specify): | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

| Alternative/Additional Address<br>*(name and address)* | Address from: | Delivery Method |
|---|---|---|
| | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: (specify): | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| Alternative/Additional Address<br>*(name and address)* | ☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: (specify): | ☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2017                                Page 8                         **F 4003-2.4.JR.LIEN.MOTION**

Label Matrix for local noticing
0973-2
Case 2:18-bk-16436-NB
Central District of California
Los Angeles
Fri Jun  8 16:16:09 PDT 2018

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

AmeriCredit/GM Financial
Attn: Bankruptcy
Po Box 183853
Arlington, TX 76096-3853

Aspen G. Revocable Trust
2700A Philadelphia Rd
Edgewood, MD 21040

CWMBS  Inc., CHL Mortgage Pass
through Trust 2005-3
c/o Bayview Loan Servicing, LLC
P.O Box 650091
Dallas, TX 75265-0091

California Auto Finance
311 E Katella Ave
Orange, CA 92867-4860

FCI Lender Services Inc
8180 E. Kaiser Blvd
Anaheim, CA 92808-2277

GM Financial
PO BOX 182963
Arlington, TX 76096-2963

LoanMe, Inc.
Attn: Bankruptcy
Po Box 5648
Orange, CA 92863

Timepayment Corp, LLC.
16 New England Executive Office Park S.
Burlington, MA 01803-5217

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Zieve, Brodnax & Steele, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606-3401

Blanca Estela Rubalcava
16227 Salazar Drive
Hacienda Heights, CA 91745-4862

Kathy A Dockery (TR)
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017-5569

Kevin Tang
Tang & Associates
601 S, Figueroa Street., Suite 4050
Los Angeles, CA 90017-5879

End of Label Matrix
Mailable recipients    14
Bypassed recipients     0
Total                  14

# Exhibit I

## "BAYVIEW MORTGAGE STATEMENT"

SXJ6285671R-00C



Bayview Loan Servicing, LLC
P.O. Box 650091
Dallas, TX 75265-0091
www.bayviewloanservicing.com

1 877.251.0990

17785

## Mortgage Statement

Statement Date: 05/16/18

| | |
|---|---|
| Account Number | 433 |
| Payment Due Date | 06/01/18 |
| **Total Amount Due** | **$45,655.83** |

*If payment is received after 6/16/18, a $76.15 late fee will be charged.*
Please note, after 05/16/2018 this amount may not be sufficient to bring your loan current as additional fees, charges, or attorney fees/costs may have been incurred but not yet invoiced or processed as of the Statement Date, or may have been incurred after the Statement Date. Please contact us at the number above to obtain the current amount due.

Blanca Estela Velasquez
16227 Salazar Dr
Hacienda Heights, CA 91745-4862

### Account Information

| | |
|---|---|
| Outstanding Principal Balance †‡ | $499,514.52 |
| Deferred Amount | $120,225.36 |
| Interest Rate | 2% |
| Interest Rate Change Date | 07/01/21 |
| Escrow Balance | -$9,333.73 |
| Late Charge Balance | $837.65 |
| Rec Corp Advance Balance | $7,843.62 |
| Prepayment Penalty | N |
| Property Address | 16227 SALAZAR DR |
| | HACIENDA HEIGHTS CA 91745 |

‡Payments will be applied in order that they become due (oldest first) unless bankruptcy or other court ordered payment plan is in place.
*Fees and Charges are comprised of Recoverable Corporate Advances, Late Fee and NSF Fees assessed since the last billing cycle.
**Past Due Amount is the sum of the due balances for Principal and Interest, Escrow and Fees & Charges.

### Explanation of Amount Due

| | |
|---|---|
| Principal | $710.36 |
| Interest | $812.70 |
| Escrow (Taxes and Insurance) | $607.75 |
| **Regular Monthly Payment** | **$2,130.81** |
| Fees & Charges Assessed* | $3,872.56 |
| Past Due Amount** | $39,652.46 |
| **Reinstatement Amount** | **$45,655.83** |
| (as of 05/16/2018) | |
| **Accelerated Amount** | **$652,318.28** |
| (as of 05/16/2018) | |

### Transaction Activity (04/17/18 to 05/16/18)

| Date | Description | DEBITS | CREDITS |
|---|---|---|---|
| 04/19 | Property Inspection | 11.00 | |
| 04/20 | Foreclosure Attorney Fee | 213.75 | |

*Additional Transaction may be found on Page 3*

### Past Payments Breakdown

| | Paid Last Bill | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Fees & Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)‡‡ | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### Important Messages

Your Point of Contact is ROBERT TYER and can be reached on 855-262-7798.

### **Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 05/16/18 you are 500 days delinquent on your mortgage.

*Recent Account History:*
Payment due: 12/01/17: Unpaid balance of $2,035.53
Payment due: 01/01/18: Unpaid balance of $2,035.53
Payment due: 02/01/18: Unpaid balance of $2,035.53
Payment due: 03/01/18: Unpaid balance of $2,035.53
Payment due: 04/01/18: Unpaid balance of $2,035.53
Payment due: 05/01/18: Unpaid balance of $2,130.81
Current payment due 06/01/18: $2,130.81
Total: $45,655.83 due. You must pay this amount to bring your loan current.

If you are experiencing Financial Difficulty: See Back for information about mortgage counseling or assistance.

Please be advised, we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process.

‡‡ **Partial Payments**: Any partial payment that is received is not applied to the mortgage payment, but instead is held in a separate suspense account; when the balance of a partial payment is received the funds will then be applied to your mortgage.

†This is the Principal Balance only, not the amount required to pay the loan in full. Please contact Customer Service for an exact payoff balance. In the event the loan is in default or foreclosure, you must contact 1.877.251.0990 for payoff information.

Our records indicate the original loan has been modified on 10/03/16.

This modified loan has a deferred balance of $120,225.36 that will be due and payable at maturity or through any payoff request.

Our records indicate the HAMP (Alternative Mortgage Program) modification status is Modified/active.

BAYVIEW LOAN SERVICING, LLC    Please include the loan number on your check. If we    Borrower BLANCA ESTELA VELASQUEZ

# Exhibit 2

## "LETTER FROM ASPEN G. REVOCABLE TRUST"



# Aspen Properties Group, LLC

May 11, 2018

Blanca E Velasquez
16227 Salazar Drive
La Puente, CA 91745

| | |
|---|---|
| **Loan Number:** ,1890 | **Current Lender:** Aspen G Revocable Trust |
| | **Original Amount:** $100,000.00 |
| **Secured by real property located at:** | **Original Lender:** Indymac Bank F.S.B. |
| 16227 Salazar Drive | **Mortgage:** dated June 15, 2005 and recorded |
| La Puente, CA 91745 | on June 23, 2005 as Instrument Number 05- |
| | 1477951 in Los Angeles County, CA |

**This communication is from a Debt Collector and any information obtained will be used for that purpose.**

Mrs. Blanca Velasquez,

Aspen G Revocable Trust is the Owner of the junior Mortgage and Note, and Aspen Properties Group LLC is the Trustee for Aspen G Revocable Trust. FCI Lender Services, Inc. is the Servicer of your loan, which is secured by the Mortgage or Deed of Trust recorded on the above-referenced property.

We're following up on our Welcome letter dated March 9, 2018 and delivered at the property listed above on March 14, 2018. You failed to contact our office and or provide us with an updated financial intake package on or before March 28, 2018 as requested in the Welcome letter. We made several attempts to contact you by phone with no success. We reviewed your account on FCI and noted that you have not contacted their office in reference to their written correspondence and monthly statements. It's very important that you contact us on or before **Friday May 25, 2018** or your account may be transferred to our attorney for further collections.

Aspen G Revocable Trust understands the current economy is tough right now and most people do not have the funds readily available to fully reinstate. You may be eligible for a loan workout plan including a **Discounted Payoff, a Loan Modification, and or a Forbearance Agreement**. These services are provided without cost to our customers.

Aspen G Revocable Trust provides consumer friendly assistance programs designed to help resolve delinquency and avoid foreclosures. Unlike the larger Banking Institutions, Aspen G Revocable Trust will provide you with friendly and personal customer service by designating an individual customer representative, Stephen C Gryglewski, to handle your account. Aspen G Revocable Trust also has the staffing expertise to quickly analyze your financial condition.

2ND Lien Holder

Blanca Velasquez

Our first step is to conduct a thorough analysis of the Borrower's financial situation. Please provide us with the following documentation on or before **Friday, May 25, 2018**. Please scan and email the docs to steveg@aspenfunds.net or fax us the documents at 800-719-0282 whatever is most convenient.

- Copies of three most recent Bank Statements; all pages; all Bank Accounts.
- Copies of three most recent Pay Stubs, Retirement, or Social Security Statements
- Copies of most recent Investment Account Statements, including 401K Statement.
- Copy of your signed 2016 Tax Return.
- Copy of your signed 2017 Tax Return.
- Copy of your most recent 1st Mtg Statement and loan modification if applicable.
- Please complete and sign the attached Financial Intake Form.

**If you would like to learn more about these programs, you may contact Mr. Stephen Gryglewski, your Aspen G Revocable Trust representative, at 800-326-5799 ext. 101 during the following hours: Monday through Friday: 8 a.m. to 8 p.m. and Saturday 9 a.m. – 2 p.m. Eastern Standard Time.**

If you are represented by an attorney, Aspen G Revocable Trust will work with your attorney. We will also work with housing counselors, consumer debt counselors and other representatives with your written authorization. If you are represented by an attorney, this letter is being mailed to you to forward to your attorney. We will release information to your attorney without further authorization. If you wish to have information regarding your account provided to individuals or groups other than your attorney, your signed written authorization (including your social security number) is required. We are also required by law to inform you that if you notify us you do not wish us to contact you by telephone at your place of employment, and then no such contact will be made.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARTY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE NATIONAL GUARD OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMEDIATELY.**

**Pursuant to Section 106 of the Housing and Urban Development Act of 1968, you may have the right to receive counseling or may qualify for other loan counseling regarding the retention of your home from various local agencies. You may secure a list of the agencies by contacting the Department of Housing and Urban Development at (800)-569-4287 (Toll-Free) or TTY/TDD 1-800-877-8339. You may find other useful consumer information on**

Blanca Velasquez

foreclosure alternatives on the HUD website at http://www.hud.gov/foreclosure/ including an article on "Tips for Avoiding Foreclosure".

We have enclosed a list of housing counselors near you in the event that you would like to contact someone for advice. This list was obtained from the Consumer Financial Protection Bureau's website, and was compiled based on your zip code. You may also obtain more information by visiting the Consumer Financial Protection Bureau's website at http://www.consumerfinance.gov/find-a-housing-counselor/.

You may also call the Homeowner(s) HOPE Hotline at 888-995-HOPE (4673) for further counseling. The HOPE Hotline offers free HUD-certified counseling services in English and Spanish and can help answer any questions you may have.

Please be advised if you are a debtor in bankruptcy or have been discharged in bankruptcy, this statement does not represent and is not intended to be a demand for payment. In such cases, this letter is provided for you for information purposes only and is not an attempt to collect a debt. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.

Regards,

Stephen C. Gryglewski
Aspen Properties Group, LLC – Trustee of Aspen G Revocable Trust
Sr. Vice President
Direct 443-863-6294
Office 800-326-5799
steveg@aspenfunds.net
NMLS#699138


CC:    FCI Lender Services, Inc.

# Exhibit 3

## "DEAD OF TRUST ASPEN G. REVOCABLE TRUST"



This page is part of your document - DO NOT DISCARD



**05 1477951**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**06/23/05 AT 08:00am**

# TITLE(S) :

_____





L E A D    S H E E T

**FEE**                                       D.T.T.

**CODE
20**

**CODE
19**

**CODE
9**____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**



**05  1477951**

RECORDING REQUESTED BY:

WHEN RECORDED RETURN TO:
Name:    INDYMAC BANK
Address: 3465 E. FOOTHILL BLVD.
City:      PASADENA, CALIFORNIA
Zip:       91107

SPACE ABOVE FOR RECORDERS USE

Order No.

## TITLE(s) OF DOCUMENT

## DEED OF TRUST

Assessors Identification Number (AIN) _____-_____-_____

INVESTORS TITLE COMPANY                          6/23/05

Loan No:      6044
This document was prepared by Lilia Salazar
3465 East Foothill Boulevard, Pasadena, CA 91107
Please return this document after recording to:          05 1477951   3
IndyMac Bank, F.S.B. c/o Document
Management
3465 E. Foothill Blvd.

Pasadena, CA 91107

——————— State of California ——————————————— Space Above This Line For Recording Data ———————

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ....    June 15, 2005
and the parties, their addresses and tax identification numbers, if required, are as follows
TRUSTOR      Blanca Estela Velasquez, an unmarried woman

        16227 Salazar Drive, La Puente, CA 91745
[ ] If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and
acknowledgments.
TRUSTEE· Investors Title Co.
        101 E Glenoaks Blvd, Glendale, CA 91207

LENDER:  IndyMac Bank, F.S.B., a federally chartered savings bank

    155 North Lake Avenue, Pasadena, CA 91101

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably
grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described
property:
    Legal description attached hereto and made a part hereof.

The property is located in            Los Angeles            at   16227 Salazar Drive
                                      (County)

                                      La Puente          , California    91745
                                      (City)                              (ZIP Code)
            (Address)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ 100,000.00          This limitation of amount does not include interest and other fees and charges validly
made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows.
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
       described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers'
       names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*
       One certain home equity line of credit agreement dated June 15, 2005
       executed by Blanca Estela Velasquez in the amount of $100,000.00 due and
       payable in full on July 15, 2025.

                        **SEE EXHIBIT "A**
                        **ATTACHED**

CALIFORNIA- HOME EQUITY LINE OF CREDIT DEED OF TRUST  (NOT FOR FNMA, FHLMC, FHA OR VA USE)                         (page 1 of 6)
Experea © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA  3/10/2004
VMP -C465(CA) (0403).01                   VMP Mortgage Solutions, Inc. (800)521-7291



6/23/05

Loan No:          044

*4*

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

ExperE © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP ®-C465(CA) (0403) 01

**05 1477951**

*B.V.*    (page 2 of 6)



6/23/05

Loan No:      044

5

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

Insurance. Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6.  **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C F R 591), as applicable.

8.  **DEFAULT.** Trustor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

    **Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument, (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected, (g) the Property is taken through eminent domain, (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest, or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

    **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9.  **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

    At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter Lender shall be entitled to, without limitation, the power to sell the Property.

Experts® © 1994 Bankers Systems, Inc , St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA) (0403) 01

05 1477951

BV.

*(page 3 of 5)*



6/23/05

Loan No:    5044

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that.

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA) (0403) 01

**05 1477951**



*(page 4 of 6)*

6/23/05

Loan No:    5044

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

   ☐ Assignment of Leases and Rents    ☐ Other

22. ☐ **ADDITIONAL TERMS.**

ExpereE © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA) (0403) 01

05 1477951

B.V.

(page 5 of 6)



6/23/05

Loan No·    ͻ044

8

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy
of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded
_____ N/A_____ ,  _____ , in book  N/A  page  N/A  , records of
_____ N/A_____  County, (or filed for record with recorder's serial number  N/A  ,
_____ N/A_____  County) California, executed by  N/A
_____ N/A_____  as trustor (or mortgagor) in which
_____ N/A_____  , is named as beneficiary (or mortgagee) and
as trustee be mailed to:
Name  N/A  at
Address  N/A

NOTICE: A copy of any notice of default and of any notice    Signature on behalf of the requester named above·
of sale will be sent only to the address contained in this
recorded request. If your address changes, a new request
must be recorded.    Signature  N/A
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in
any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) Blanca Estela Velasquez    6-N-05    (Signature)
(Date)    (Date)

**ACKNOWLEDGMENT.**
STATE OF  California  , COUNTY OF  Los Angeles  } ss.
On this  6/15/05  day of  June 2005  before me  Zuleika Krzeminski
a notary public, personally appeared  Blanca Estela Velasquez

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument
WITNESS my hand and official seal.



ZULEIKA KRZEMINSKI
Commission # 1566726
Notary Public - California
San Bernardino County
My Comm. Expires Apr 12, 2009

Signature
Name (typed or printed)
My commission expires:  4/12/09

(Seal)

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the
office of the Recorder of  County, State of California, in book  ,
page  of official records. Said note or notes, together with all other indebtedness secured by this Deed of
Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are
delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the
person or persons legally entitled thereto.
Dated·

---

Assessor's Identification Number    8205-010-032

**05 1477951**

Experts © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0403).01    (page 6 of 6)

Page No. 7
6/23/05    File No. 14063390-104

# Exhibit A
## LEGAL DESCRIPTION

*9*

All that certain real property in the County of LOS ANGELES, State of California, described as follows:

LOT 99 OF TRACT NO. 27172, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 698 PAGES 87 TO 89 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

APN No:  8205-010-032

# Exhibit 4

## "DEAD OF TRUST BEST DIAMOND FUNDING CORP."



**This page is part of your document - DO NOT DISCARD**





**20080151157** Pages: 009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/24/08 AT 10:15AM**

| Fee: | 43.00 |
|------|-------|
| Tax: | 0.00 |
| Other: | 27.00 |
| Total: | 70.00 |

1586641    200801240080018    Counter

## TITLE(S) :



L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**



Recording Requested By
BEST DIAMOND FUNDING CORP

When recorded mail to

Name        BEST DIAMOND CORP

Street Address

6428 PACIFIC BLVD  STE  302

City        HUNTINGTON PARK

State       CALIFORNIA

Zip Code 90255

01/24/08



20080151157

Space above this line for recorder's use

## DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST ("Security Instrument") is made on JANUARY 23, 2008

The Trustor is BLANCA E. VELASQUEZ _____ (hereinafter referred to as BORROWER)

The Trustee is BEST DIAMOND FUNDING CORP _____ (hereinafter referred to as TRUSTEE)

The beneficiary is BEST DIAMOND FUNDING CORP _____, which is organized and existing under the

laws of CALIFORNIA _____ or, for a natural person, is a resident of _____,

and whose address is 6428 PACIFIC BLVD  STE  302, HUNTINGTON PARK,CA 90255

(hereinafter referred to as LENDER)  Borrower owes Lender the principal sum of FORTY TWO THOUSAND SIX HUNDRED

DOLLARS _____ ($ 42,600 00 _____,) U S Dollars

This debt is evidenced by Borrower's Promissory Note dated the same date as this Security Instrument (hereinafter referred to
as NOTE), which provides for monthly payments, with the full debt, if not paid earlier, due and payable

on JULY 23, 2008

This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under section 7 to protect
the security of this Security Instrument, (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note and (d)  payment of such further sums as may be advanced by Borrower when evidenced by another
promissory note (or promissory notes) reciting it is so secured

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following

described property located in _____ LOS ANGELES _____ County, California

LOT 99 OF TRACT NO  27172, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 698 PAGES 87 TO 89 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

This has the address of 16227 SALAZAR DR , LA PUENTE, CA 91745
Assessor's Parcel No  8205-010-032

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument
All of the foregoing is referred to in this Security Instrument as the "Property "

Mail tax Statement to  SAME AS ABOVE_____

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. PAYMENT OF PRINCIPAL AND INTEREST:** Prepayment and Late Charges  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note

**2. FUNDS FOR TAXES AND INSURANCE**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, (e) yearly mortgage insurance premiums, if any, and (f) any sums payable by Borrower to Lender, in accordance with the provisions of section 8, in lieu of the payment of mortgage insurance premiums  These items are called "Escrow Items "  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C  Section 2601 et seq  ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all sums secured by this Security Instrument
If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender  If, under section 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

**3. APPLICATION OF PAYMENTS:** Unless applicable law provides otherwise, all payments received by Lender under sections 1 and 2 shall be applied first, to any prepayment charges due under the Note, second, to amounts payable under section 2, third, to interest due, fourth, to principal due, and last, to any late charges due under the Note

**4. CHARGES, LIENS:** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any  Borrower shall pay these obligations in the manner provided in section 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this section  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien, which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5. HAZARD OR PROPERTY INSURANCE:** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section 7. All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in sections 1 and 2 or change the amount of the payments. If under section 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition

**6. PRESERVATION, MAINTENANCE AND PROTECTION OF THE PROPERTY; BORROWER'S LOAN APPLICATION; LEASEHOLDS:**
Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**7. PROTECTION OF LENDER'S RIGHTS IN THE PROPERTY:** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this section 7, Lender does not have to do so

Any amounts disbursed by Lender under this section 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment

**8. MORTGAGE INSURANCE:** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect If, for any reason, the mortgage insurance coverage required by- Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law

**9. INSPECTION:** Lender, Trustee or their agents may make reasonable entries upon and inspections of the Property Lender or Trustee shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection

**10.CONDEMNATION:** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking Any balance shall be paid to Borrower In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemn or offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in sections 1 and 2 or change the amount of such payments

**11.BORROWER NOT RELEASED; FORBEARANCE BY LENDER NOT A WAIVER:** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

**12.SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of section 17 Borrower's covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument,(b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

**13.LOAN CHARGES** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note

**14.NOTICES:** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this section

**15.GOVERNING LAW; SEVERABILITY:** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision  To this end the provisions of this Security Instrument and the Note are declared to be severable

**16.BORROWER'S COPY:** Borrower shall be given one conformed copy of the Note and of this Security Instrument

**17.TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER:** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**18.BORROWER'S RIGHT TO REINSTATE** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged  Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under section 17

**19.SALE OF NOTE; CHANGE OF LOAN SERVICER.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with section 14 above and applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made  The notice will also contain any other information required by applicable law

**20.HAZARDOUS SUBSTANCES:** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property  Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substances or Environmental Law of which Borrower has actual knowledge  If Borrower learns, or is notified by any governmental or

regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this section 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials As used in this section 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

**21.ACCELERATION; REMEDIES** LENDER SHALL GIVE NOTICE TO BORROWER PRIOR TO ACCELERATION FOLLOWING BORROWER'S BREACH OF ANY COVENANT OR AGREEMENT IN THIS SECURITY INSTRUMENT (BUT NOT PRIOR TO ACCELERATION UNDER SECTION 17 UNLESS APPLICABLE LAW PROVIDES OTHERWISE) THE NOTICE SHALL SPECIFY (A) THE DEFAULT, (B) THE ACTION REQUIRED TO CURE THE DEFAULT, (C) A DATE, NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN TO BORROWER, BY WHICH THE DEFAULT MUST BE CURED, AND (D) THAT FAILURE TO CURE THE DEFAULT ON OR BEFORE THE DATE SPECIFIED IN THE NOTICE MAY RESULT IN ACCELERATION OF THE SUMS SECURED BY THE SECURITY INSTRUMENT AND SALE OF THE PROPERTY THE NOTICE SHALL FURTHER INFORM BORROWER OF THE RIGHT TO REINSTATE AFTER ACCELERATION AND THE RIGHT TO BRING A COURT ACTION TO ASSERT THE NON-EXISTENCE OF A DEFAULT OR ANY OTHER DEFENSE OF BORROWER TO ACCELERATION AND SALE IF THE DEFAULT IS NOT CURED ON OR BEFORE THE DATE SPECIFIED IN THE NOTICE, LENDER, AT ITS OPTION, MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER DEMAND AND MAY INVOKE THE POWER OF SALE AND ANY OTHER REMEDIES PERMITTED BY APPLICABLE LAW LENDER SHALL BE ENTITLED TO COLLECT ALL EXPENSES INCURRED IN PURSUING THE REMEDIES PROVIDED IN THIS SECTION 21, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES AND COSTS OF TITLE EVIDENCE

IF LENDER INVOKES THE POWER OF SALE, LENDER SHALL EXECUTE OR CAUSE TRUSTEE TO EXECUTE A WRITTEN NOTICE OF THE OCCURRENCE OF AN EVENT OF DEFAULT AND OF LENDER'S ELECTION TO CAUSE THE PROPERTY TO BE SOLD  TRUSTEE SHALL CAUSE THIS NOTICE TO BE RECORDED IN EACH COUNTY IN WHICH ANY PART OF THE PROPERTY IS LOCATED  LENDER OR TRUSTEE SHALL MAIL COPIES OF THE NOTICE AS PRESCRIBED BY APPLICABLE LAW TO BORROWER AND TO THE OTHER PERSONS PRESCRIBED BY APPLICABLE LAW  TRUSTEE SHALL GIVE PUBLIC NOTICE OF SALE TO THE PERSONS AND IN THE MANNER PRESCRIBED BY APPLICABLE LAW  AFTER THE TIME REQUIRED BY APPLICABLE LAW, TRUSTEE, WITHOUT DEMAND ON BORROWER, SHALL SELL THE PROPERTY AT PUBLIC AUCTION TO THE HIGHEST BIDDER AT THE TIME AND PLACE AND UNDER THE TERMS DESIGNATED IN THE NOTICE OF SALE IN ONE OR MORE PARCELS AND IN ANY ORDER TRUSTEE DETERMINES  TRUSTEE MAY POSTPONE SALE OF ALL OR ANY PARCEL OF THE PROPERTY BY PUBLIC ANNOUNCEMENT AT THE TIME AND PLACE OF ANY PREVIOUSLY SCHEDULED SALE LENDER OR ITS DESIGNATE MAY PURCHASE THE PROPERTY AT ANY SALE
TRUSTEE SHALL DELIVER TO THE PURCHASER TRUSTEE'S DEED CONVEYING THE PROPERTY WITHOUT ANY COVENANT OR WARRANTY, EXPRESSED OR IMPLIED  THE RECITALS IN THE TRUSTEE'S DEED SHALL BE PRIMA FACIE EVIDENCE OF THE TRUTH OF THE STATEMENTS MADE THEREIN  TRUSTEE SHALL APPLY THE PROCEEDS OF THE SALE IN THE FOLLOWING ORDER  (A) TO ALL EXPENSES OF THE SALE, INCLUDING, BUT NOT LIMITED TO, REASONABLE TRUSTEE'S AND ATTORNEYS' FEES, (B) TO ALL SUMS SECURED BY THIS SECURITY INSTRUMENT, AND (C) ANY EXCESS TO THE PERSON OR PERSONS LEGALLY ENTITLED TO IT

**22. RECONVEYANCE:** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Such person or persons shall pay any reconveyance fees or recordation costs

**23. SUBSTITUTE TRUSTEE.** Lender or Borrower, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by ~~Lender or Borrower~~ and recorded in the office of the Recorder of the county in which the Property is located  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee  Without conveyance of the Property, the successor trustee shall succeed to call the title, powers and duties conferred upon the Trustee herein and by applicable law  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

**24. REQUEST FOR NOTICES:** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address

**25. STATEMENT OF OBLIGATION FEE:** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California



**26. RIDERS TO THIS SECURITY INSTRUMENT:** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument

[Check applicable box( es)]

| | | |
|---|---|---|
| o  Adjustable Rate | o  Condominium | o 1-4 Family |
| o Graduated Payment | o  Planned Unit Development | o  Biweekly Payment |
| O  Balloon | o  Rate Improvement | o  Second Home |
| O VA | o  Waiver of Escrow | o  Other Rider( s) |

ADDITIONAL COVENANTS  Borrower and Lender further covenant and agree as follows

**27. LENDER'S ALLOWED ACTIONS.** That at any time, or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Deed of Trust and said promissory note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of the property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof

**28. ASSIGNMENT OF RENTS:** That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority, during continuance of these Trusts, to collect the rents, issues and profits of the property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable  Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine  The entering upon and taking possession of the property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice

**29. TRUSTEE'S ACCEPTANCE** That Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Borrower, Lender, or Trustee shall be a party unless brought by Trustee

**30. WAIVER OF STATUE OF LIMITATIONS:** Borrower waives the right to assert at any time any statute of limitations as a bar to any action brought to enforce any obligation hereby secured

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

BLANCA E. VELASQUEZ

STATE OF <u>CALIFORNIA</u>

COUNTY OF <u>LOS ANGELES</u>

On <u>01/23/08</u>, before me, <u>MYRA SANDOVAL</u>, Notary Public,
personally appeared <u>BLANCA E VALSQUEZ,</u>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity (ies), and that by his/her/their signature (s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
SIGNATURE

(Seal)



MYRA SANDOVAL
COMM # 1728714
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
MY COMM EXP MAR 4 2011

# Exhibit 5

## "APPRAISAL REPORT"

PEREZ & ASSOCIATES
12501 PHILADELPHIA STREET
WHITTIER, CA 90601
626 926 4838

4/19/18

BLANCA E. VELASQUEZ
16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745

RE:     VELASQUEZ
        16227 SALAZAR DRIVE
        HACIENDA HEIGHTS, CA 91745-4862
File No.  0052-18
Case No.

Dear  Sirs

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

                16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745-4862

The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property.  The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  4/18/18
is:

                        $        475,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _____

HECTOR M. PEREZ
PEREZ & ASSOCIATES

# APPRAISAL REPORT

## OF



16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745-4862

## PREPARED FOR

PRIVATE
BLANCA E. VELASQUEZ
16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745

## AS OF

4/18/18

## PREPARED BY

PEREZ & ASSOCIATES
12501 PHILADELPHIA STREET
WHITTIER, CA 90601

PEREZ & ASSOCIATES

File No.    0052-18

# Table of Contents

| Page Title | Page # |
| --- | --- |
| URAR Page 1 | 1 |
| URAR Page 2 | 2 |
| URAR Page 3 | 3 |
| Extra Comps 4-5-6 | 4 |
| URAR Page 4 | 5 |
| URAR Page 5 | 6 |
| URAR Page 6 | 7 |
| Photo Subject | 8 |
| Photos (12) | 9 |
| Photos (12) | 10 |
| Photo Comparables 1-2-3 | 11 |
| Photo Comparables 4-5-6 | 12 |
| Plat Map | 13 |
| Location Map | 14 |
| LICENSE | 15 |
| E & O INSURANCE | 16 |
| Flood Map | 17 |
| CONSTRUCTION SUMMARY PAGE 1 | 18 |
| CONSTRUCTION SUMMARY PAGE 2 | 19 |
| CONSTRUCTION SUMMARY PAGE 3 | 20 |
| CONSTRUCTION SUMMARY PAGE 4 | 21 |
| CONSTRUCTION SUMMARY PAGE 5 | 22 |

## Uniform Residential Appraisal Report

The purpose of this appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| Property Address | 16227 SALAZAR DRIVE | City | HACIENDA HEIGHTS | State | CA | Zip Code | 91745-4862 |

Borrower VELASQUEZ   Owner of Public Record VELASQUEZ   County LOS ANGELES

Legal Description LOT 99 TRACT 27171

Assessor's Parcel #   8205-010-032   Tax Year 2018   R.E. Taxes $ 6,076.16

Neighborhood Name HACIENDA HEIGHTS/ AREA   Map Reference 678D4   Census Tract 4086.25

Occupant [ X ] Owner [ ] Tenant [ ] Vacant Special Assessments $   0   [ ] PUD HOA $   0   [ ] per year [ ] per month

Property Rights Appraised [ X ] Fee Simple [ ] Leasehold [ ] Other (describe) N/A

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [ X ] Other (describe) ESTIMATE OF MARKET VALUE

Lender/Client BLANCA E. VELASQUEZ   Address 16227 SALAZAR DRIVE. HACIENDA HEIGHTS, CA 91745

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [ X ] No

Report data source(s) used, offerings price(s), and date(s).   THIS REPORT IS PREPARED FOR BANKRUPTCY DESOLUTION PROCEEDINGS AND MAY NOT BE
USED FOR ANOTHER USE OTHER THAN INTENDED. RESTRICTED APPRAISAL REPORT FOR THIS SPECIFIC TIME AND DATE

**CONTRACT**

[ ] I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   THIS IS AN ESTIMATE OF MARKET VALUE

Contract Price $   EST   Date of Contract   N/A   is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s) TITLE

Is there any financial assistance (loan charges, sale concessions, gift or down payment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [ X ] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [ X ] Stable [ ] Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 70 % |
| Built-Up [ X ] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [ X ] In Balance [ ] Over Supply | | | 400 Low | 5 | 2-4 Unit | 10 % |
| Growth [ ] Rapid [ X ] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [ X ] 3-6 mths [ ] Over 6 mths | | | High | 40 | Multi-Family | 10 % |
| Neighborhood Boundaries   NOTHING UNFAVORABLE NOTED, THE GENERAL NEIGHBORHOOD BOUNDARIES: 60 FWY ON | | | | | | 1 MIL. | | Commercial | 10 % |
| NORTH, 605 FWY ON WEST, AZUSA AVE ON EAST, CLOIMA RD ON SOUTH. | | | | | | .550 Pred. | 15 | Other | % |

Neighborhood Description   THE NEIGHBORHOOD PRIMARILY CONSISTS OF SFR'S AND MULTI-FAMILY RESIDENCES OF SIMILAR AGE AND DESIGN. STRUCTURES ARE OF AVERAGE QUALITY, AVERAGE TO GOOD CONDITION AND THEY EXHIBIT AVERAGE MAINTENANCE. THE SUBJECT HAS GOOD ACCESS TO ALL LOCAL SUPPORT FACILITIES INCLUDING PARKS, SCHOOLS, SHOPPING, EMPLOYMENT AND FREEWAYS. NO UNFAVORABLE MARKETABILITY NOTED. SUBJECT IS LOCATED APPROX 30 MILES NEAST OF LOS ANGELES

Market Conditions (including support for the above conclusions)   THE MARKET IS STABLE HOWEVER IT IS RELATIVELY STABLE; PRICES ARE AFFORDABLE & RATES ARE FAVORABLE. THERE IS AN LIMITED OF AVAILABLE LISTINGS & THE FORECLOSURE RATE IS LOW; HOWEVER THE ABSORPTION RATE IS HEALTHY & THE LIST TO SALES PRICE RATIO IS HEALTHY. OVERPRICED PROPERTIES ARE STAYING ON THE MARKET FOR EXTENDED PERIODS OF TIME.

**SITE**

| Dimensions   SEE PLAT MAP | Area 15,433 | Shape RECTANGULAR | View PANORAMIC |

Specific Zoning Classification   LCRA10   Zoning Description SINGLE FAMILY RESIDENTIAL

Zoning Compliance [ X ] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) N/A

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [ X ] Yes [ ] No  If No, describe.
N/A

| Utilities Public Other (describe) | | Public Other (describe) | | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity [ X ] | | Water [ X ] | | Street ASPHALT | [ X ] | |
| Gas [ X ] | | Sanitary Sewer [ X ] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [ X ] No FEMA Flood Zone X   FEMA Map # 06037C1875F   FEMA Map Date 09/26/2008

Are the utilities and/or off-site improvements typical for the market area? [ X ] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [ X ] No  If Yes, describe.
NO ADVERSE EASEMENTS OR ENCROACHMENTS WERE OBSERVED. THE TITLE REPORT WAS NOT REVIEWED SUBJECT IS LOCATED ON CUL DE SAC.
PANORAMIC VIEW OF MOUNTAIN AND CITY 180° VIEW  ALSO IN CLOSE PROXIMITY TO MESA-ROBLES JUNIOR HIGH; NO ADVERSE AFFECT. *** LEVEL
LOT  SLOPING AT REAR TO SET-BACK; TYPICAL FOR AREA.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description   materials/condition | | Interior   materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [ X ] One [ ] One with Accessory Unit | | [ X ] Concrete Slab [ ] Crawl Space | | Foundation Walls CONC/AVERAGE | | Floors Wood.TILE.WD /FAIR | |
| # of Stories  2 Story | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls STUC/AVERAGE | | Walls Drywall/AVG | |
| Type [ X ] Det. [ ] Att. [ ] S-Det/End Unit | | Basement Area   sq. ft. | | Roof Surface COMP SHINGLE | | Trim/Finish WD.PAINT/AVG | |
| [ X ] Existing [ ] Proposed [ ] Under Const. | | Basement Finish   % | | Gutters & Downspouts NONE | | Bath Floor TILE/AVG | |
| Design (Style)  2 STORY | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type CaL-SKE/FAIR | | Bath Wainscot TILE/AVG | |
| Year Built  1963 | | Evidence of [ ] Infestation NONE | | Storm Sash/Insulated N/A | | Car Storage [ ] None | |
| Effective Age (Yrs)  25-30 | | [ ] Dampness [ ] Settlement | | Screens YES/AVG | | [ X ] Driveway  # of Cars  2 | |
| Attic [ ] None | | Heating [ X ] FWA [ ] HWBB [ ] Radiant | | Amenities | Woodstove(s) # | Driveway Surface CONCRETE | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other NONE Fuel GAS | | [ X ] Fireplace(s) # 1 [ X ] Fence | | [ X ] Garage  # of Cars  2 | |
| [ ] Floor [ X ] Scuttle | | Cooling [ ] Central Air Conditioning | | [ X ] Patio/Deck [ X ] Porch | | [ ] Carport  # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool [ ] Other | | [ ] Att. [ ] Det. [ X ] Built-In | |

Appliances [ X ] Refrigerator [ X ] Range/Oven [ X ] Dishwasher [ X ] Disposal [ ] Microwave [ ] Washer/Dryer [ X ] Other (describe) FANHOOD

Finished area  above  grade contains:   8   Rooms   4   Bedrooms   2   Bath(s)   1,598   Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   NO APPARENT FUNCTIONAL OR PHYSICAL
INADEQUACIES NOTED. THE SUBJECT HAS BEEN ADEQUATELY MAINTAINED & UPGRADED THROUGHOUT THE YEARS. THE SUBJECT IS IN FAIR TO
CONDITION AND IS OF AVERAGE QUALITY. SEE ATTACHED COST TO REPAIR ESTIMATE $248500.00 (ROUNDED) $249,000.00

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ X ] Yes [ ] No  If Yes, describe
SEE ATTACHED COST TO REPAIR ESTIMATE FROM LIC. CONTRACTOR 934200 $248,500.00 (ROUNDED) $249,000.00

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [ X ] Yes [ ] No  If No, describe   N/A

## Uniform Residential Appraisal Report

There are _____ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ _____ to $ _____
There are _____ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ _____ to $ _____

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 16227 SALAZAR DRIVE | 1923 VASCONES DRIVE | | 1945 DURANO DRIVE | | 16264 CANELONES DRIVE | |
| | HACIENDA HEIGHTS, CA 91745-4862 | HACIENDA HEIGHTS, CA | | HACIENDA HEIGHTS, CA | | HACIENDA HEIGHTS, CA | |
| Proximity to Subject | | 0.34 miles N | | 0.27 miles N | | 0.47 miles S | |
| Sale Price | $ EST | $ 640,000 | | $ 669,000 | | $ 610,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 399.50 sq. ft. | | $ 418.13 sq. ft. | | $ 335.72 sq. ft. | |
| Data Source(s) | MLS/TITLE | MLS/TITLE | | MLS/TITLE | | MLS/TITLE | |
| Verification Source(s) | INSPECTION | CLOSED | | CLOSED | | CLOSED | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | CONV | | CONV | | CONV | |
| Concessions | | | | | | 3800 | -3,800 |
| Date of Sale/Time | 4/18 | 10/25/17 | | 11/7/17 | | 12/12/17 | |
| Location | Average | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 15,633 | 19,722 | -4,089 | 11,545 | +4,088 | 11,247 | +4,386 |
| View | PANORAMIC | PANORAMIC | | CITY LIGHTS | +10,000 | NONE | +25,000 |
| Design (Style) | 2 STORY | 2 STORY | | 2 STORY | | 2 STORY | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 55 yrs | 55 yrs | | 55 yrs | | 55 yrs | |
| Condition | Fair-AVG | AVERAGE | -124,000 | GOOD | -249,000 | GOOD | -249,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  4  2 | 6  4  2.00 | | 7  3  3.00 | -2,000 | 7  3  3.00 | -2,000 |
| Gross Living Area | 1,598 sq. ft. | 1,602 sq. ft. | | 1,600 sq. ft. | -50 | 1,817 sq. ft. | -5,475 |
| Basement & Finished | NONE | STANDARD | | STANDARD | | STANDARD | |
| Rooms Below Grade | NONE | DOM 41 | | DOM 50 | | DOM 70 | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | FaU/NONE | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2 GARAGE | 2 GARAGE | | 2 GARAGE | | 2 GARAGE | |
| Porch/Patio/Deck | PATIO/PORCH | PATIO/PORCH | | PATIO/PORCH | | PATIO/PORCH | |
| Fireplaces | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| APN# | 8205-010-032 | 8205-003-014 | | 8205-002-013 | | 8205-023-019 | |
| Net Adjustment (Total) | | + X - | $ -128,089 | + X - | $ -234,962 | + X - | $ -230,889 |
| Adjusted Sale Price | | Net Adj: -20% | | Net Adj: -35% | | Net Adj: -38% | |
| of Comparables | | Gross Adj: 20% | $ 511,911 | Gross Adj: 39% | $ 434,038 | Gross Adj: 47% | $ 379,111 |

I [ ] did [X] did not research the sale or transfer history of the subject property and comparable sales. If not, explain   N/A

My research [ ] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  NDC & MLS
My research [ ] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  NDC & MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | TITLE | TITLE | TLTIE | TITLE |
| Effective Date of Data Source(s) | 4/18/18 | 4/18/18 | 4/18/18 | 4/18/18 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach   ALL OF THE COMPARABLE SALES WERE DERIVED FROM WITHIN THE SUBJECT'S COMPETITIVE MARKET AREA AND APPEARED TO BE THE MOST REPRESENTATIVE OF THE SUBJECT PROPERTY AS OF THE EFFECTIVE DATE OF VALUE. THE SUBJECT'S FINAL ESTIMATE OF VALUE FALLS WITHIN THE SUPPORT ABLE RANGE OF COMPARABLES. SEE ADDITIONAL SALES FOR FURTHER SUPPORT. CONSERVATIVE APPROACH TO VALUE CONSIDERED DUE TO CURRENT ECOMONIC TIMES. MOST WEIGHT GIVEN TO SALES 2,3,4 & 5 AS THEY ARE MOST SIMILAR AS COMPARED TO SUBJECT PROPERTY.

Indicated Value by Sales Comparison Approach $   475,000

| Indicated Value by: Sales Comparison Approach $ | 475,000 | Cost Approach (if developed) $ | 473,036 | Income Approach (if developed) $ | 0 |
|---|---|---|---|---|---|

THE SALES COMPARISON IS DEEMED MOST APPROPRIATE/RELIABLE FOR DETERMINING VALUE IN THIS REPORT. THE COST APPROACH IS WEIGHED SECONDARILY, BUT IS ONLY BEING USED FOR SUPPORT. THE INCOME APPROACH IS NOT APPLICABLE HERE.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   475,000   as of   4/18/18   , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70   March 2005                                                     Fannie Mae Form 1004   March 2005

## Uniform Residential Appraisal Report

——— NOTES ON SUBJECT: 2 STORY SFR IN FAIR-AVG. CONDITION. SEE ATTACHED COST TO REPAIR ESTIMATE $ 248500.00 ( ROUNDED)
$249,000.00 **** 4 BEDROOM 2 BATH UTILITY. FIREPLACE IN FAMILY ROOM . KITCHEN WAS REMODELED YEARS GO. FLOOR COVERINGS APPEAR AT
END OF USEFUL LIFE. TRI-LEVEL DESIGN ; HOWEVER SECTION OF STAIRS LEADING TO 1ST LEVEL HAVE BEEN REMOVED AND SEALED OFF. GARAGE
COVERSION TO LIVING AREA. 2ND LEVEL LIGHT SWITCHES AND ELECTRICAL USES APPEAR WORN. CAL SHAKE ROOF APPEARS WORN FRONT
SECTION NEAR PORCH LOOKS WORPPED AND HAS A CURVE,. LEAKY. ROOF NEAR FRONT PORCH AREA. RECOMMEND TERMITE REPORT &
CLEARANCE. SEE ATTACHED COST TO REPAIR ESTIMATE FROM LIC# CONTRACTOR $248,500.00 (ROUNDED) $249,000.00

**ADDITIONAL COMMENTS**

FOR A MORE DETAILED REPORT OF THE SUBJECT PLEASE SEEK A HOME INSPECTION FROM A QUALIFIED INDIVIDUAL. THE VISUAL INSPECTION OF
THE ABOVE ASPECTS IS TO INSURE THAT THE SUBJECT PROPERTY MEETS FHA STANDARDS FOR LENDING PURPOSES. THIS REPORT IS NOT A HOME
INSPECTION. ALSO, APPRAISER IS NOT AN EXPERT IN SOIL, STRUCTURAL, SEISMIC, ENVIRONMENTAL, GEOLOGICAL, DRAINAGE, ELECTRICAL,
MECHANICAL OR LEGAL CONDITIONS.

>>> NOTES ON SALES COMPARISON APPROACH:
ALL COMPS ARE GOOD INDICATORS OF VALUE AND ARE THE BEST AVAILABLE AT THIS TIME BASED ON A COMBINATION OF RECENCY,
SIMILARITY AND PROXIMITY.

***THE FOLLOWING ADJUSTMENTS WERE UTILIZED: SITE @ $1.00 PSF, BATHROOMS @ $2,000.00 EACH, GLA @ $30.00 PSF.

### COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

**COST APPROACH**

| | | | |
|---|---|---|---|
| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ 250,000 |
| Source of cost data  MARSHALL & SWIFT; LOCAL TRADE JOURNALS | Dwelling     1,598    Sq. Ft. @ $  175.00 | =$ | 279,650 |
| Quality rating from cost service     AVG     Effective date of cost data    06/12 | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | HARDSCAPE/PATIO | | 25,000 |
| THE SUBJECT'S LAND TO IMPROVEMENT RATIO IS TYPICAL FOR THIS | Garage/Carport     400    Sq. Ft. @ $  50.00 | =$ | 20,000 |
| AREA AND HAS NO EFFECT ON MARKETABILITY. COST FIGURES ARE | Total Estimate of Cost-new | =$ | 324,650 |
| FROM MARSHALL & SWIFT ALONG WITH OTHER RELIABLE SOURCES IN | Less      Physical  39  Functional   0   External   0 | | |
| THE AREA. | Depreciation  126,614        0        0 | =$ ( | 126,614 ) |
| | Depreciated Cost of Improvements | =$ | 198,036 |
| THE ESTIMATED REMAINING ECONOMIC LIFE IS 40-45 YEARS | "As-is" Value of Site Improvements | =$ | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only)       40-45      Years | Indicated Value By Cost Approach | =$ | 473,036 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae.)

**INCOME**

Estimated Monthly Market Rent $       0        X Gross Multiplier      0.00      =$       0       Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowner's Association (HOA)? [ ] Yes [ ] No  Unit type(s) [ ] Detached [ ] Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project  N/A
Total number of phases     N/A     Total number of units     N/A     Total number of units sold     N/A
Total number of units rented     N/A     Total number of units for sale    N/A    Data source(s)  N/A
Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion.  N/A
Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data source. N/A
Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No  If No, describe the status of completion.  N/A

Are the common elements leased to or by the Homeowner's Association?  [ ] Yes  [ ] No  If Yes, describe the rental terms and options.  N/A

Describe common elements and recreational facilities.   N/A

PEREZ & ASSOCIATES
EXTRA COMPARABLES 4-5-6

File No.    0052-18

| Borrower | VELASQUEZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | | |
| City | HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 16227 SALAZAR DRIVE | 1439 HINNEN AVE | | 2631 TERESINA DRIVE | | | |
| | HACIENDA HEIGHTS, CA 91745-4862 | HACIENDA HEIGHTS, CA | | HACIENDA HEIGHTS, CA | | | |
| Proximity to Subject | | 0.55 miles N | | 0.53 miles W | | | |
| Sale Price | $ EST | $ 585,000 | | $ 619,000 | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 265.91 sq. ft. | | $ 397.81 sq. ft. | | $ sq. ft. | |
| Data Source(s) | MLS/TITLE | MLS/TITLE | | MLS/TITLE | | | |
| Verification Source(s) | INSPECTION | CLOSED | | PENDING SALE | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | CONV | | | | | |
| Concessions | | | | | | | |
| Date of Sale/Time | 4/18 | 2/28/18 | | 3/12/18 | | | |
| Location | Average | AVERAGE | | AVERAGE | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 15,633 | 6,109 | +9,524 | 14,124 | +1,509 | | |
| View | PANORAMIC | VALLEY | +15,000 | PANORAMIC | | | |
| Design (Style) | 2 STORY | 2 STORY | | 2 STORY | | | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | | |
| Actual Age | 55 yrs | 58 yrs | | 56 yrs | | | |
| Condition | Fair-AVG | AVERAGE | -124,000 | AVERAGE | -124,000 | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 4 2 | 9 3 2.00 | | 7 3 2.0 | | | |
| Gross Living Area | 1,598 sq. ft. | 2,200 sq. ft. | -15,050 | 1,556 sq. ft. | +1,050 | sq. ft. | |
| Basement & Finished | NONE | STANDARD | | STANDARD | | | |
| Rooms Below Grade | NONE | DOM 36 | | DOM 20 | | | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | | |
| Heating/Cooling | FaU/NONE | FAU/CAC | | FAU/CAC | | | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | | |
| Garage/Carport | 2 GARAGE | 2 GARAGE | | 2 GARAGE | | | |
| Porch/Patio/Deck | PATIO/PORCH | PATIO/PORCH | | PATIO/PORCH | | | |
| Fireplaces | FIREPLACE | FIREPLACE | | FIREPLACE | | | |
| APN# | 8205-010-032 | 8243-003-017 | | 8204-008-019 | | | |
| Net Adjustment (Total) | | + X - | $ -114,526 | + X - | $ -121,441 | + - | $ |
| Adjusted Sale Price | | Net Adj: -20% | | Net Adj: -20% | | Net Adj: 0% | |
| of Comparables | | Gross Adj: 28% | $ 470,474 | Gross Adj: 20% | $ 497,559 | Gross Adj: 0% | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | TITLE | | | |
| Effective Date of Data Source(s) | 4/18/18 | | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach ADDITIONAL SALES ADDED TO FURTHER SUPPORT DERIVED VALUE ESTIMATE. SALE #4 IS ANOTHER CLOSED SALE THAT HELPS SUPPORT VALU ESTIMATE. COMP#5 IS A PENDING SALE ADJUSTED FOR SUPERIOR CONDITION.

File No.    0052-18

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No.    0052-18

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

### SUPERVISORY APPRAISER'S CERTIFICATION:   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  HECTOR M. PEREZ | Name |
| Company Name  PEREZ & ASSOCIATES | Company Name |
| Company Address  12501 PHILADELPHIA STREET | Company Address |
| WHITTIER, CA 90601 | |
| Telephone Number (626) 926-4838 | Telephone Number |
| Email Address  PEREZAPPRAISALS@HOTMAIL.COM | Email Address |
| Date of Signature and Report  4/19/18 | Date of Signature |
| Effective Date of Appraisal  4/18/18 | State Certification # |
| State Certification #  AR007743 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License 10/31/2018 | |

ADDRESS OF PROPERTY APPRAISED
16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745-4862

APPRAISED VALUE OF SUBJECT PROPERTY $      475,000
LENDER/CLIENT
Name      PRIVATE
Company Name   BLANCA E. VELASQUEZ
Company Address  16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745
Email Address

SUBJECT PROPERTY

☐ Did not inspect subject property.
☐ Did inspect exterior of subject property from street
  Date of Inspection
☐ Did inspect interior and exterior of subject property
  Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection

PEREZ & ASSOCIATES

**SUBJECT PHOTO ADDENDUM**    File No.   0052-18

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | VELASQUEZ | | | | | |
| Property Address | 16227 SALAZAR DRIVE | | | | | |
| City | HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code   91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | |



**FRONT OF
SUBJECT PROPERTY**
16227 SALAZAR DRIVE
HACIENDA HEIGHTS, CA 91745-4862



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

PEREZ & ASSOCIATES

File No.   0052-18

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower   VELASQUEZ | | | | | | | |
| Property Address   16227 SALAZAR DRIVE | | | | | | | |
| City   HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 | |
| Lender/Client   BLANCA E. VELASQUEZ | | Address   16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | | | |



ADDRESS



CLOSE UP



ROOF DETAIL



VIEW FROM REAR



DOWNSLOPE LOT



SIDE



COVERED PATIO



SIDE



DEBRIS



LAUNDRY AREA





BROKEN STUCCO

PEREZ & ASSOCIATES

File No.    0052-18

Borrower    VELASQUEZ
Property Address    16227 SALAZAR DRIVE
City    HACIENDA HEIGHTS    County    LOS ANGELES    State    CA    Zip Code    91745-4862
Lender/Client    BLANCA E. VELASQUEZ    Address    16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745


OVERGROWN PALM FRONDS


EXTERIOR STAIRCASE


LIVING ROOM


KITCHEN


FAU/CAC VENTS


FAU


BATHROOM


DEFERRED MAINTENANCE


BEDROOM


BEDROOM


GARAGE


SLOPING ROOF AT FRONT

PEREZ & ASSOCIATES
COMPARABLES 1-2-3                                  File No.    0052-18

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | VELASQUEZ | | | | | |
| Property Address | 16227 SALAZAR DRIVE | | | | | |
| City HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | |



**COMPARABLE SALE #**    1
1923 VASCONES DRIVE
HACIENDA HEIGHTS, CA



**COMPARABLE SALE #**    2
1945 DURANO DRIVE
HACIENDA HEIGHTS, CA



**COMPARABLE SALE #**    3
16264 CANELONES DRIVE
HACIENDA HEIGHTS, CA

PEREZ & ASSOCIATES

COMPARABLES 4-5-6                           File No.   0052-18

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | VELASQUEZ | | | | | |
| Property Address | 16227 SALAZAR DRIVE | | | | | |
| City HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client BLANCA E. VELASQUEZ | | | Address 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | |



**COMPARABLE SALE #**   4
1439 HINNEN AVE
HACIENDA HEIGHTS, CA



**COMPARABLE SALE #**   5
2631 TERESINA DRIVE
HACIENDA HEIGHTS, CA

**COMPARABLE SALE #**   6

PEREZ & ASSOCIATES
**PLAT MAP**

File No.    0052-18

| Borrower | VELASQUEZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | | |
| City  HACIENDA HEIGHTS | | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | |



Data Deemed Reliable, But Not Guaranteed
Copyright © 2004-2016 Lender Processing Services, Inc. All Rights Reserved. All other trademarks and copyrights are the property of their respective holders.
Customer Service Rep:    Gary Rblock
4/13/2016

**Lawyers Title**

LOCATION MAP ADDENDUM

File No.   0052-18

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | VELASQUEZ | | | | | |
| Property Address | 16227 SALAZAR DRIVE | | | | | |
| City HACIENDA HEIGHTS | | County | LOS ANGELES | State | CA | Zip Code 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | |



LICENSE    File No.    0052-18

| Borrower | VELASQUEZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | | |
| City HACIENDA HEIGHTS | | County | | LOS ANGELES | State CA | Zip Code | 91745-4862 |
| Lender/Client BLANCA E. VELASQUEZ | | | Address 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | | |



Business, Consumer Services & Housing Agency

**BUREAU OF REAL ESTATE APPRAISERS**

**REAL ESTATE APPRAISER LICENSE**

**Hector M. Perez**

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    AR 007743

Effective Date:    November 1, 2016
Date Expires:    October 31, 2018

3029044

Jim Martin, Bureau Chief, BREA

| Borrower | VELASQUEZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | | |
| City HACIENDA HEIGHTS | | County | LOS ANGELES | | State | CA | Zip Code    91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | |



General Star National Insurance Company
P.O. Box 10360   (Attn: GSN)
Stamford, Connecticut  06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number: NJA547483                    Renewal of Number:

1.  **NAMED INSURED:** Hector M Parez
    STREET ADDRESS: 12501 Philadelphia Street, Whittier, CA 90601

2.  **POLICY PERIOD:** Inception Date: 02/01/2018          Expiration Date: 02/01/2019
    Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3.  **LIMITS OF LIABILITY:**
    Each **Claim:** $1,000,000
    Aggregate: $1,000,000
    Claim Expenses have a separate Limit of Liability:
    Each Claim: $1,000,000
    Aggregate: $1,000,000

4.  **DEDUCTIBLE:**      Each Claim: $0    Aggregate: $0

5.  **RETROACTIVE DATE:** 02/01/2018
    If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error,
    omission or personal injury which occurred before such date.

6.  **ANNUAL PREMIUM:**          $997

7.  **ENDORSEMENTS:**
    This policy is made and accepted subject to the printed policy form together with the following form(s) or
    endorsement(s).

    AP 10 0001 06 11,  SGN 90 0001 07 10,   AP 06 0001 06 11,    AP 54 0001 06 11,    AP 20 0001
    06 11,   AP 21 0002 06 11,  AP 27 0004 06 11,    AP 01 0004CA 06 11,   AP 08 0006CA 06 11,
8.  **PRODUCER NAME:** Norman-Spencer Agency, Inc.
    STREET ADDRESS: 8075 Washington Village Drive Dayton, OH 45458

_____
Authorized Representative

Producer Code:  26480                 Class Code 73128
Date:   02/02/2018

AP 10 0001 06 11       © Copyright 2011, General Star Management Company, Stamford, CT       Page 1 of 1

FLORES & ASSOCIATES
**FLOOD MAP ADDENDUM**                                    File No.    0052-18

Borrower    VELASQUEZ
Property Address    16227 SALAZAR DRIVE
City  HACIENDA HEIGHTS          County          LOS ANGELES          State          CA          Zip Code          91745-4862
Lender/Client    BLANCA E. VELASQUEZ          Address    16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745



**Flood Map Legends**

Flood Zones

Areas inundated by 500-year flooding

Areas outside of the 100 and 500 year flood plains

Areas inundated by 100-year flooding

Areas inundated by 100-year flooding with velocity hazard

Floodway areas

Floodway areas with velocity hazard

Areas of undetermined but possible flood hazard

Areas not mapped on any published FIRM

**Flood Zone Determination**

SFHA (Flood Zone): **Out**
Within 250 ft. of multiple flood zones? **No**
Community: **065043**
Community Name:  **UNINCORPORATED AREAS**
Zone: **X**    Panel: **06037C 1875F**    Panel Date: **09/26/2008**
FIPS Code: **06037**    Census Tract: **4086.25**

This Report is for the sole benefit of the Customer that ordered and paid for the
Report and is based on the property information provided by that Customer.
That Customer's use of this Report is subject to the terms agreed to by that
Customer when accessing this product. No third party is authorized to use or
rely on this Report for any purpose. THE SELLER OF THIS REPORT MAKES
NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY
CONCERNING THE CONTENT, ACCURACY OR COMPLETENESS OF
THIS REPORT INCLUDING ANY WARRANTY OF MERCHANTABILITY OR
FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall
not have any liability to any third party for any use or misuse of this Report.

Borrower   VELASQUEZ
Property Address   16227 SALAZAR DRIVE
City   HACIENDA HEIGHTS          County          LOS ANGELES          State   CA   Zip Code   91745-4862
Lender/Client   BLANCA E. VELASQUEZ          Address   16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745



16443 Whittier Blvd # 206 — Whittier, Ca. 90605

(562) 632-1350   Office
(562) 632-1352   Fax
(877) ECPD-INC   T-Free

Best Builders in Town - License # 934200

E-mail   ed@expressdesign.com

## Construction Bid Summary

Date:            4 – 17 – 2018

Project Address:      16227 Salazar Drive – Hacienda Heights, Ca. 91745

Property Owner:      Blanca Velasquez

Contact Phone #:      626-703-0897 / blanca16227@yahoo.com

**Brief Description of Project:**

The project consists:

- Repairing existing condition of the house.

Borrower  VELASQUEZ
Property Address  16227 SALAZAR DRIVE
City  HACIENDA HEIGHTS          County          LOS ANGELES          State  CA    Zip Code  91745-4862
Lender/Client  BLANCA E. VELASQUEZ          Address  16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745

**Specifications and Description of Work (Materials & Labor)**

- Electrical:                                                                                          $ 17,500.00
  - New 200 amp service panel & ground to the main water service
  - Rewire entire house & detach garage; plugs, lighting and switches per code.
  - Decora plugs & switches throughout; vacancy sensor switches on bathroom & laundry room
  - Standard white cover plates throughout
  - 4 - 4" LED recesses cans each room throughout
  - Kitchen counter top plugs @ 2' max from each end & 4' on center, per building code
  - A separate circuit for range, refrigerator, garbage disposal, microwave & laundry area
  - 2 exterior GFCI plug (1 @ the front & 1 @ the rear of the house) w/ bubble covers
  - 1 circuit to garage

- HVAC:                                                                                              $ 14,500.00
  - New 5 ton Carrier Force Air Unit with AC condenser with a split system.
  - R-6 for all ducts

- Plumbing:                                                                                          $ 24,500.00
  - Pressure wash existing sewer line; existing sewer is under a slab on grade foundation
  - New 1-1/4 PVC water service
  - Re-pipe; (PEX piping throughout)
  - New angle stop & water hose throughout
  - New tank-less water heater with circular pump
  - Install 4 water hose connections
  - Install "T" with a shut-off valve for landscape irrigation

- Bathroom                                                                                            $ 15,600.00
  - Demolish ceiling drywall; sign of mold – install new ½" drywall & mud
  - Demolish existing tile on the tub walls
  - New 32" x 60" Kohler fiber-glass tub
  - New Kohler toilet
  - New solid maple vanity with Kohler sink and faucet
  - New shower/tub combination valve (Kohler)
  - New exhaust fan with minimum of 50 cfm
  - Tile installation @ tub walls & flooring (140 sf apprx)
  - New tub enclosure

| | |
|---|---|
| Borrower  VELASQUEZ | |
| Property Address  16227 SALAZAR DRIVE | |
| City  HACIENDA HEIGHTS    County    LOS ANGELES    State    CA    Zip Code    91745-4862 | |
| Lender/Client  BLANCA E. VELASQUEZ    Address  16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | |

**Kitchen Area:**    $ 28,200.00

- Demolish existing kitchen cabinets, counter tops, back splash & tile flooring
- Prepare existing floor & install quick level for tile installation
- New Maple solid kitchen cabinets with self-closed hardware
- New Quartz counter-tops & back-splash
- New kitchen faucet, sink & garbage disposal
- New range hood, cook top, dishwasher & wall oven (LG appliances)
- Install range hood with 100 CFM minimum
- Install new tile flooring (apprx 100 sf)

**Interior:**

- Replace interior & closet slider doors (hollow core), door knobs & door stoppers    $ 4,700.00
- New smoke alarm in each sleeping room & combination of CO & smoke in each hall (hard-wire)    $ 700.00
- Repair drywall (orange peel texture) and prepare for paint    $ 7,300.00
- Paint; all interior (walls, ceiling, doors, casing & baseboards, etc)    $ 14,100.00
- Replace existing carpet in the staircase & all bedrooms    $ 5,800.00
- Replace hall linen closet cabinet – solid maple wood    $ 3,600.00

**Exterior:**

- New windows and sliding doors. All to be vinyl frame, dual glaze & low-e glass. Tempered glass    $ 16,500.00
  per code in sliding doors & bathroom window.
- Re-stucco existing residence & garage; 2 months of scaffold rental    $ 18,500.00
- Replace exterior entry door of the dwelling & the garage man door    $ 2,800.00
- Demolish existing flat tile roofing. Replace 2 x 10 fascia board (spruce materials) & 1 x 8 starter    $ 38,600.00
  board (termite and/or water damage). Install new ½" OSB roof sheathing with radiant barrier.
  Install felt #30 roofing paper, new 2 x 2 drip edge flashing, plumbing vents flashing, 24" x 12" half
  round dormers & 4" L-metal
- New aluminum rain gutters & downspouts throughout the house & garage    $ 5,500.00
- Break existing concrete: front walk-way, rear open patio area & concrete steps. Grade area,    $ 23,300.00
  form and reinforce using #3 rebar @ 24" o.c. – 40 yards of 2,500 psi concrete
- Repair existing wood fence & gates – stain it (owner to choose stain color) – apprx 125 linear ft    $ 6,200.00
- Replace existing guardrail @ the front & rear concrete steps    $ 4,500.00

*It's highly recommended to termite tent the dwelling.*

Initials_____

CONSTRUCTION SUMMARY PAGE 2                File No.   0032-18

| Borrower | VELASQUEZ | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | | |
| City | HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | | |

Service and/or Items Not Provide:

EC Precise Designs will not include:

* Building Department permits and/or other agency fees.

* Any work not in this agreement.

Payments:

* EC Precise Designs shall receive the total contract of $ 248,500.00

* Progress payments will be based on completion of work and/or materials order from the supplier (store). Invoices will be provide to the owner.

* Approximately time frame from start to finish full 18 working weeks. Delays may occur if there is a change of order, natural disaster, fire or bad weather condition and/or any other reason not involving the project. The time of extension must be in writing and sign by both parties.

Initials _____

CONSTRUCTION SUMMARY PAGE 1    File No.    0052-18

| Borrower | VELASQUEZ | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 16227 SALAZAR DRIVE | | | | | |
| City | HACIENDA HEIGHTS | County | LOS ANGELES | State | CA | Zip Code | 91745-4862 |
| Lender/Client | BLANCA E. VELASQUEZ | | Address | 16227 SALAZAR DRIVE, HACIENDA HEIGHTS, CA 91745 | | |

**Owner Responsibilities:**

• The owner shall provide full information regarding requirements for the project. The owner shall furnish required information as expeditiously as necessary for the orderly progress of the work.

• The owner shall designate a representative authorized to act on the owner's behalf with respect to the project. The owner or such authorized representative shall render decisions in a timely manner pertaining to documents submitted by EC Precise Designs in order to avoid unreasonable delay in the orderly and sequential progress of the company services.

• The owner shall not request any modification of any work to EC Precise Designs employees and/or sub-contractors without authorization of independent contractor. If so, EC Precise Designs will not be responsible for any damages and/or miss-understanding of the work perform.

• If the owner offers work or hire EC Precise Designs employee (s) and/or sub-contractor (s) without any authorization from the independent contractor, the contractor has the right to terminate all perform services under this agreement without returning and/or reimburse payments paid to the independent contractor.

**Termination or Suspension:**

• This agreement may be terminated by either party upon not less than three (3) days' written notice should the other party fail substantially to perform in accordance with the terms of this agreement through no fault of the party initiating the termination.

• If the owners fails to make payment (s) when due, EC Precise Designs may, upon seven (7) days' written notice to the owner, suspend performance of services under this agreement. Unless payment in full is received within seven (7) days of the date of the notice, the suspension shall take effect without further notice.

• In the event of a suspension of services, EC Precise Designs shall have no liability to the owner for delay or damage caused the owner because of such suspension of services.

**Modification:**

• This agreement may not be modified, altered or changed except in writing signed by the parties hereto and approved by the authority.

**Arbitration Dispute Resolution:**

• Claims, disputes or other matters in question between the parties to this agreement arising out of or relating to this agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

• A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

If this agreement is acceptable to all parties concerned, please sign and return with $ 1,000.00 deposit.

Authority:                                   EC Precise Designs, Inc.:

_____  4 / 17 / 2018        _____  4 / 17 / 2018
(Signature)                Date:              (Signature)                Date:

_____  4 / 17 / 2018        Ed Cruz_____  4 / 17 / 2018
(Print name)               Date:              (Print name)               Date:

**This proposal is good for 30 days.**